UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civ. No. 08-3533 |
| Plaintiff, | |
| v. | OPINION |
| $225,894 IN U.S. CURRENCY, | HON. WILLIAM J. MARTINI |
| Defendant *in rem*. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on the Government's motion to strike Sabak Fajngold's claim to $217,702.00 of the $225,894.00 in U.S. Currency that is the subject of this civil forfeiture action. For the reasons set forth in this Opinion, the Court will **GRANT** the Government's motion and **STRIKE** Mr. Fajngold's claim.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The relevant facts in this matter are fairly straightforward. For purposes of this Opinion, it is sufficient to note that on May 16, 2008 and May 30, 2008, the Government seized a total of $225,894.00 in United States currency (the "Seized Funds") from three bank accounts held in the name of Roman Fajngold[1] ("Roman") based on its belief that certain deposits made to those accounts between June 25, 2007, and April 17, 2008, were

---

[1] Namely, Capital One NA account 3209038078, held in the name of Roman Fajngold, Two River Community Bank account 0824248948 held in the name of Roman Fajngold, and HSBC Bank account 67485321 held in the name of Roman Fajngold in trust for Ryan Fajngold.

1

structured in violation of 31 U.S.C. § 5324, and thus subject to civil forfeiture pursuant to 31 U.S.C. § 5317(c)(2).

On August 25, 2008, Claimant Sabak Fajngold, Roman's brother, filed a claim challenging the validity of the forfeiture. Specifically, Claimant asserts that because he is the sole legal and bona fide owner of $217,702.00 of the Seized Funds (hereinafter, the "Claimed Funds"), he is entitled to that money. (Verified Claim, ECF No. 4.) Claimant's September 5, 2008 Answer echoes that assertion. (ECF No. 5.)

In response to Claimant's filings, and pursuant to Rule G(6)(a) of the Supplemental Rules[2] of the Federal Rules of Civil Procedure, the Government served special interrogatories upon Claimant on September 25, 2008. In his October 12, 2008 sworn responses to those interrogatories, Claimant stated that he would withdraw cash from his bank accounts in Israel and give it to Roman to save for him until he moved to the United States. (Claimant's Resp. to Interrog. ¶¶ 8, 11, Decl. of Jordan M. Anger, Ex. E, ECF No. 6-4.) He also stated that Roman was allowed to use those funds for any purpose as long as they were ultimately returned to Claimant. (*Id*. at ¶ 10.)

Thereafter, at his March 23, 2011 deposition, Claimant elaborated on his sworn interrogatory responses. In that deposition, he explained how he initially acquired the Claimed Funds. He further explained that he gave the Claimed Funds to his brother in cash increments to hold for him. (Sabak Fajngold Dep. Mar. 23, 2011, Anger Decl. at Ex. F.) However, Claimant did not provide any details on the exact dates and exact

---

[2] More precisely, the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

amounts given to Roman. In fact, the portions of Claimant's deposition testimony and interrogatory responses in which he explains why he has an ownership interest in the Seized Funds can properly be characterized as vague, incomplete, and confusing. Moreover, based on his testimony, it is clear that even if Claimant gave his brother an amount of cash equivalent to the Claimed Funds, he cannot be certain that the any portion of the Seized Funds was derived from the money he entrusted to his brother because Claimant exercised no control over that money once he turned it over. That conclusion is evidenced by the following exchange:

> "Q.     . . . Since that first time you gave your Roman the $100,000, have you ever given him any more money to hold for you?
>
> A.     First of all, I didn't give it to him. I told him to keep it for me and then – and afterwards, whenever I was able to, I would give him money in order to reach an amount sufficient for a house.
>
> Q.     Okay. When you said you gave it to him to keep it for you, did you give him any instructions on what to do with the money?
>
> A.     No.
>
> Q.     Did you tell him there was anything he could not do with the money?
>
> A.     What could I have told him? No.
>
> Q.     Do you know what he did with the money?
>
> A.     No.
>
> Q.     Do you know where he kept the money?
>
> A.     No, never.

> Q. Did he ever tell you anything he did with the money?
>
> A. I didn't ask. My mind wasn't on the money.
>
> Q. Did he – well, but did he ever tell you anything that he did with the money?
>
> A. No."

(*Id*. at 28:18-29-16.)

Aside from his sworn interrogatory responses and deposition testimony, Claimant has not presented any evidence demonstrating the existence of a financial arrangement under which Roman would keep Claimant's money in bank accounts under Roman's name, nor is there any indication that Claimant had a right to withdraw the Claimed Funds from those accounts. Nonetheless, Claimant asserts that he is entitled to the Claimed Funds.

The Government now moves to strike Sabak Fajngold's claim pursuant to Rule 8(c)(i)(B), arguing that in light of the limited proofs set forth by Claimant, he lacks standing to bring this claim. *See* Supplement Rule (8)(c) ("At any time before trial, the government may move to strike a claim or an answer . . . because the claimant lacks standing. [The Court may determine on summary judgment] whether the claimant can carry the burden of establishing standing by a preponderance of the evidence.")

II. **DISCUSSION**

    A. **STANDARD OF REVIEW**

        a. **Standing is a Threshold Requirement**

4

Standing is a threshold consideration in all cases, including matters relating to challenges to the forfeiture of property by the Government.  *See United States v. $8.221,877.16 in U.S. Currency*, 330 F.3d 141, 150, n. 9 (3d Cir. 2003), *citing United States v. Contents of Accounts 3034504504 & 14407143 (In re Friko Corp.)*, 971 F.2d 974, 984–85 (3d Cir.1992).  In this case, Claimant, as the party seeking to challenge forfeiture of the Seized Funds, must establish that he has both statutory and Article III standing to bring his claim.  *Id.  See also Arevalo v. United States*, No. 05-110, 2011 WL 442054, at *3 (E.D. Pa. Feb. 8, 2011) *citing Kadonsky v. United States*, 216 F.3d 499, 508 (5th Cir. 2000) (in forfeiture matters, a claimant bears the burden of proving that he has standing).  Here, the Government concedes that Claimant has complied with the procedural requirements for filing a claim set forth in Supplement Rule G(5), and is thus not seeking dismissal based on Claimant's lack of statutory standing.  The Government instead moves to strike Sabak Fajngold's claim because he has failed to establish Article III standing.

> b. **Article III Standing**

Article III standing relates to Claimant's ability to show that he has a sufficient interest in the Seized Funds to satisfy the case-or-controversy requirement of Article III of the Constitution.  *United States v. 8 Gilcrease Lane*, 641 F.Supp.2d 1, 5-6 (D.D.C. 2009); *see also $8,221,877.16 in U.S. Currency*, 330 F.3d at 150, n. 9, *citing In re Friko Corp.,* 971 F.2d at 984.   In the forfeiture context, this means that Claimant must establish a colorable ownership or possessory interest in the Seized Funds.  *Munoz-Valencia v.*

5

*U.S.,* 169 Fed.Appx. 150 , 152 (3d Cir. 2006).  To meet this requirement, Claimant must present "some evidence of his ownership interest."  *Kadonsky*, 216 F.3d at 508.  A bare assertion of ownership in the Seized Funds, without more, is insufficient to establish Article III standing.  *Id*.  *See also Arevalo*, 2011 WL 442054, at *3 (citing cases).

**B.    ANALYSIS**

On the undisputed facts before the Court, the Seized Funds were taken from bank accounts which were in Claimant's brother's name.  There is no record of Claimant depositing any funds into those accounts, much less of him making those deposits between June, 2007 and May, 2008.  And while Claimant testified that he gave his brother over $200,000 in cash through the years so he could buy a house in America, Claimant has not presented any records showing when he gave his brother even $1.00 of that money, much less presented the Court with a written document memorializing that agreement.

In short, the only proofs offered by Claimant to support his claim that he has an ownership interest in any portion of the Seized Funds are his interrogatory responses and deposition testimony.  Claimant argues that at this stage in the litigation, and when given all favorable inferences, his sworn responses create sufficient evidence of ownership over the Claimed Funds to establish Article III standing. (Claimant's Opp. 6, ECF No. 9.) Implicit in Claimant's argument is that any determination of the credibility of that testimony must be made later in this proceeding.  In other words, Claimant argues that because "this is not a case where there is a bald assertion of ownership," Claimant has

presently satisfied his requirement of demonstrating Article III standing. (Claimant's Opp. 6, ECF No. 9.)

The Court disagrees. This matter has been pending for over three years. Claimant has had ample opportunity to present proofs which corroborate his interrogatory responses and deposition testimony. He has elected not to. And at this stage in the litigation, Claimant's testimony standing alone, whether credible or not, is insufficient to confer Article III standing. *See Kadonsky v. United States*, 216 F.3d 499, 508 (5th Cir. 2000) (claim of ownership of currency standing alone insufficient to establish standing); *Arevalo v. United States*, No. 05–110, 2011 WL 442054 (E.D. Pa. Feb. 8, 2011) (self-serving interrogatory answers and deposition testimony of claimant that seized property was his insufficient to show colorable interest in property to confer standing); *United States v. $447,815.00 in U.S. Currency*, No. 09-204, 2011 WL 40836490 (M.D.N.C. July 26, 2011) *aff'd sub nom. United States v. Carroll*, No. 11-2197, 2012 WL 1021831 (4th Cir. Mar. 28, 2012) (same); *United States v. $29,550.00 in U.S. Currency*, No. 05–313, 2006 WL 148992 (W.D. Mo. Jan. 18, 2006) (claimant's statements of ownership of currency in his "complaint" and verified statement insufficient to confer standing).

And because Claimant has failed to present sufficient evidence showing that he has a colorable ownership interest in the seized funds, he has failed to meet his threshold burden of establishing Article III standing. Accordingly, his claim will be stricken.

### III.     CONCLUSION

For the reasons set forth in this Opinion, the Government's motion to strike Claimant Sabak Fajngold's claim is **GRANTED**.

/s/William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 22, 2012**